450 A.2d 154

**BIGELOW–SANFORD, INC., Appellant,**

v.

**SECURITY–PEOPLES TRUST COMPANY.**

Superior Court of Pennsylvania.

Argued Sept. 29, 1981.

Filed Sept. 10, 1982.

Thomas J. Ridge, Erie, for appellant.

Gregory L. Heidt, Erie, for appellee.

Before CAVANAUGH, MONTEMURO and VAN der VOORT, JJ.

VAN der VOORT, Judge:

This case requires a determination of priority of two claims to certain assets of a now-bankrupt debtor. The debtor, Carpet Warehouse, Inc., was in the business of selling floor coverings. Plaintiff-appellant, Bigelow-Sanford, Inc., was a major supplier of carpeting to the debtor. The defendant-appellee, Security-Peoples Trust Co., from time to time loaned money to Bigelow.

On April 16, 1971, the debtor executed and delivered to the Bank a security agreement and financing statements, which were properly filed with the Prothonotary and with the Secretary of State on that day. Each financing statement stated: "This Financing Statement covers the following types (or items) of property: All present and future accounts receivable submitted, including new accounts receivable whenever acquired. All cash and non cash proceeds are claimed." On August 10, 1971, the debtor executed and delivered to Bigelow a Security Agreement and Financing Statement properly filed in Erie County and with the Secretary of State. Each Financing Statement stated: "This Financing Statement covers the following types (or items) of property: Inventory of carpet and related products now owned or hereafter acquired, and all additions and accessions thereto, *and all proceeds of its sale or* other disposition." (Emphasis added). In April of 1974, the debtor and the

Bank executed and filed a second set of financing statements, consolidating the notes extant. In early 1975, similarly, the debtor executed a current note to Bigelow for the balance then due of $91,165.56, endorsed personally by the debtor's president.

In the spring of 1975, the debtor received a purchase order from St. Vincent Hospital for Bigelow carpeting. Bigelow required the debtor to execute financing statements covering the carpet, which statements were duly filed, and which specifically referred to the carpet to be installed in the hospital.[1]

The carpeting was installed in the Hospital in September or October of 1975. Shortly thereafter, the debtor filed a voluntary petition for bankruptcy. The price of the carpet, less a minor adjustment to correct defects in installation (a balance of $9,484.43) was paid to the Trustee in Bankruptcy, to be held in escrow by him until the conflicting claims of Bigelow and of the Bank could be disposed of. Appellant filed suit in order to procure a determination of the question of priorities. The case was submitted to the lower court on the basis of stipulations, the deposition of the president and owner of Carpet Warehouse, and the deposition of a purchasing agent for the hospital.

The lower court ruled in favor of the bank, noting that both parties, having stipulated to the basic facts, agreed that the issue was not resolved specifically by Article 9 of the Uniform Commercial Code,[2] or by Pennsylvania case law. The court, in essence, accepted the position of the bank that:

1) The bank's security interest was perfected on April 16, 1971 (renewed in April, 1974), thus giving it a secured claim to the debtor's present and future accounts receivable;

2) The amount which St. Vincent Hospital owed to Carpet Warehouse upon delivery and installation of Bigelow's car-

---

1. At approximately the same time, Carpet Warehouse procured another order for the Hospitality Shop of St. Vincent Health Center. Bigelow insisted that Bigelow be paid directly for the carpet and padding. Carpet Warehouse assented to this arrangement.

2. 12 P.S. § 9–101, et seq., now 13 Pa.C.S. § 9101, et seq.

pet was an account receivable of Carpet Warehouse and therefore subject to the bank's security interest;

3) The Hospital's debt to Carpet Warehouse was also subject to the Financing Statement executed by Carpet Warehouse in favor of Bigelow (filed July 9, 1975, specifically covering the 1,125 square yards of carpeting to be installed at St. Vincent's Hospital, worth approximately $11,000);

4) The $11,000 (adjusted later by agreement to $9,484.43) owing from the hospital comprised the "proceeds" of the resale of the carpet, as the word is used in § 9–306(1) [now § 9306(a)] of the Code;

5) Since both the Bank and Bigelow have valid recorded claims against the $9,494.43, the priority between them must be determined under § 9–312(5) [now § 9312(e)], which provides that in all cases not governed by other rules stated in this section, priority between conflicting security interests in the same collateral shall be determined in the order of filing if both are perfected by filing;

6) The Bank was the first to file, and is entitled to the money.

Recognizing that there was a conflict of opinion among writers of law review articles on the problem, the lower court reinforced its decision in favor of the Bank with this comment:

This court is persuaded that the subsequent inventory financier (in this case, the plaintiff) had at least two methods by which to protect himself: (1) By checking the filings, the plaintiff would have become aware of the defendant's prior interest and a subrogation agreement may have been negotiated; or (2) The plaintiff, as a purchase money secured creditor, could have followed the notification procedures of Section 9–312(3) (Section 9312(c), thereby guaranteeing absolute priority of his claim.

On the other hand, if we were to adopt the reasoning of the plaintiff, there is little that the defendant could do to protect his interests, and this would frustrate the purpose of filing under the Code.

■ Appellant argued below, and argues now on appeal, that it is entitled to priority under the Code by reason of the cross-reference in § 9–312(1) [now § 9312(a)] to § 9–306 (now § 9306). Section 9–312 stated: "The rules of priority stated in the following sections shall govern where applicable: ... Section 9–306 on 'proceeds' and repossession ...." Section 9–306(1) states: " 'Proceeds' include whatever is received when collateral or proceeds is sold.... The term also includes the account arising when the right to payment is earned under a contract right." It should be noted at this point that § 9–306(1) to (4) provides that a creditor who has a secured interest in certain collateral, as did Bigelow in this present case, continues to have that secured interest in the proceeds of the sale of the collateral (in this case the account owing from the Hospital to Carpet Warehouse, Inc), but § 9–306(1) to (4) does not provide an order of priority as between various holders of perfected security interests. Assuming that both the Bank and Bigelow had secured claims, resolution of the conflicting claims becomes dependent, as the lower court correctly decided, by reference to § 9–312(5), and the Bank prevails.

■ Bigelow contends further that its interest in the proceeds of the sale of its carpet to the Hospital was a "purchase money security interest," as that term is used in § 9–107 [now § 9107] of the Code, and, as such, under § 9–312(4), Bigelow would have priority over a conflicting security interest in the same article, if the purchase money security interest was perfected at the time the debtor received possession of the collateral, or within ten days thereafter.

Bigelow argues that it furnished to the debtor the carpet which the debtor sold to the Hospital, that this was the source of the Hospital's debt to the debtor, and therefore that the Hospital's debt should be allocated to Bigelow. We agree with the lower court that Bigelow cannot prevail on that theory. The security interest which Bigelow obtained under the Financing Statements filed on July 9, 1975, described the secured property as "1,125 sq. yds. of Regents

Row S–3N93 to be installed at St. Vincent's Hospital." Bigelow's "purchase money security interest" would be in *inventory,* and would therefore fall under § 9–312(3), not § 9–312(4). It would then have priority over a conflicting security interest only if Bigelow had informed the Bank, whose prior security interest was a matter of record, of Bigelow's transaction with the Debtor, as provided in § 9–312(3)(b).

Bigelow argues that it has a strong equitable claim to receive the payment made by the Hospital, because, without delivery of Bigelow's carpet to the Debtor, there would have been no sale and no payment. The Bank's security interest in the debtor's accounts receivables would then have been worth $9,484.43 less.

As the lower court pointed out, Bigelow could have taken effective steps to protect itself by notifying the Bank as provided in 9–312(3)(b), or by setting up with the Hospital and Carpet Warehouse an arrangement for payment by the Hospital to Bigelow, as was done on another order from the Hospital.

Order affirmed.