**In re DIACONX CORPORATION t/a Computerland of Bala Cynwyd, Media and Paoli, Debtor.**

**DIACONX CORPORATION t/a Computerland of Bala Cynwyd, Media and Paoli, Plaintiff,**

v.

**ITT CORPORATION and Compaq, Defendant.**

**Bankruptcy No. 86–00167F.
Adv. No. 86–0378F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 12, 1987.

---

Janet M. Sonnenfeld, Philadelphia, Pa., for debtor/plaintiff, Diaconx Corporation t/a Computerland of Bala Cynwyd, Media and Paoli.

Barry N. Sklar, Sklar, Sklar & Associates, P.C., Jenkintown, Pa., for defendant, ITT Corp. and Compaq.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

As a component of preference litigation initiated by the debtor, the parties here seek a determination of the relative priority of ITT's security interest in certain property of the debtor. Although the issue presented for decision is narrow, I am required to interpret an ambiguous section of the Uniform Commercial Code involving priorities among conflicting security interests in the same collateral. Ultimately, based on the facts submitted and giving due consideration to the purposes underlying the disputed provision, I conclude that ITT's purchase money security interest has priority over the competing earlier non-purchase money security interest held by another creditor.

### I.

At bottom, Diaconx seeks to set aside a preference pursuant to 11 U.S.C. § 547. Diaconx Corporation ("Diaconx") alleges that it paid the defendant, ITT Corporation ("ITT"), $43,199.06 during the ninety days prior to its bankruptcy filing and that the full amount of those payments is recoverable as a preference.[1] The heart of ITT's response is that it held a purchase money security interest in certain property of Diaconx and that the payments it received prior to bankruptcy do not exceed the amount ITT was entitled to receive in a liquidation. *See* 11 U.S.C. § 547(b)(5). Central to ITT's argument is the extent and priority of its security interest in Diaconx' property.

The only issue which has been presented to me at this juncture in the proceeding involves the status of ITT's security interest vis-a-vis Hamilton Bank, ("Hamilton"), another secured creditor of Diaconx.[2] All of the relevant facts are undisputed. The parties agree that in April 1984, Hamilton Bank obtained a perfected security interest in property of the debtor, including after-acquired inventory, and that ITT later obtained a perfected purchase money security interest in certain inventory thereafter obtained by the debtor. They further agree that ITT gave notice to Hamilton of its

---

1. Diaconx' claim against another defendant in this proceeding was resolved by order entered June 16, 1986.

2. The secured interest of Hamilton in Diaconx' estate received extensive consideration in a prior decision of this court. *In re Diaconx Corp.,* 69 B.R. 333 (Bankr.E.D.Pa.1987). Other aspects of Diaconx' dispute with Hamilton are reported at *In re Diaconx,* 69 B.R. 343 (Bankr.E.D.Pa., 1987) and *In re Diaconx,* 65 B.R. 139 (E.D.Pa. 1986). The Hamilton-Diaconx dispute is not relevant to the issue presented in the proceeding at bench.

security interest before Diaconx received the property at issue here, but only after ITT had perfected the security interest by filing.

Given these undisputed facts, the parties' differences about the priority of the respective security interests are based solely on their irreconcilable interpretations of UCC § 9–312. Diaconx' position is that ITT's failure to give notice of the lien claim to Hamilton, prior to perfection, subordinates ITT's security interest to that of Hamilton. ITT responds that it is sufficient to provide notice prior to Diaconx obtaining the relevant inventory, in order to establish its priority vis-a-vis Hamilton.[3]

## II.

■ In general, the Uniform Commercial Code preserves the rule that security interests in the same property have priority established in the order in which they are perfected. UCC § 9–312(5).[4] However, section 9–312 contains several exceptions to this general rule. Among them is a provision which allows the holder of a perfected purchase money security interest (PMSI) in inventory to obtain priority over a prior perfected holder of a security interest in the after-acquired property. UCC § 9–312(3). Pursuant to UCC § 9–312(3)(b), in order to obtain a first lien priority in that inventory for which it provided purchase money, the PMSI lien claimant must notify the creditor holding a conflicting security interest in after acquired property. Failure to do so results in subordination of the PMSI creditor's claim. *See Lavonia v. Emery Corp.*, 52 B.R. 944 (E.D. Pa.1985); *In re Perrotto Refrigeration, Inc.*, 38 B.R. 284 (Bankr.E.D.Pa.1984); *Bigelow-Sanford, Inc. v. Security-Peoples Trust Co.*, 31 UCC Rep. 1477 (C.C.P. Erie Co., Pa.1981) *aff'd* 304 Pa.Super. 167, 450

A.2d 154 (1982). It is the timeliness of ITT's notice to Hamilton which is at issue here.

■ The dispute in this case emerges from an unresolved ambiguity in revised UCC § 9–312(3). The ambiguity at issue has been recognized and discussed by several commentators. *See* Baker, *The Ambiguous Notification Requirement of Revised UCC section 9–312: Inventory Financier Beware!* 98 Banking L.J. 4 (1981) ("Baker"); Clark, *Law of Secured Transactions Under the Uniform Commercial Code*, ¶ 3.9[3][a] at S3–58 (Cumulative Supplement No. 3, 1986) ("Clark").

The statutory provision which created this dispute reads as follows:

Purchase money security interest in inventory.—A perfected purchase money security interest in inventory has priority over a conflicting security interest in the same inventory and also has priority in identifiable cash proceeds received on or before the delivery of the inventory to a buyer if:

(a) the purchase money security interest is perfected at the time the debtor receives possession of the inventory;

(b) *the purchase money secured party gives notification in writing to the holder of the conflicting security interest if the holder had filed a financing statement covering the same types of inventory;*

(i) *before the date of the filing made by the purchase money secured party;* or

(ii) before the beginning of the 21–day period where the purchase money security interest is temporarily perfected without filing or possession (section 9304(5));

only as to ITT's rights as a secured creditor vis-a-vis Diaconx, but not of its rights vis-a-vis Hamilton.

---

**3.** Since Hamilton is not a party to this action, the resolution of this matter will not have preclusive effect as to Hamilton. *See Hansberry v. Lee,* 311 U.S. 32, 40–41, 61 S.Ct. 115, 117–18, 85 L.Ed. 22 (1940). *See also In re Mortenson,* 41 B.R. 827 (Bankr.D.S.D.1984) *modified* 45 B.R. 764 (Bankr.D.S.D.1985) (adjudicating priority of liens in a turnover action where lienholders are not parties is not conclusive as to those lienholders). This determination will be conclusive

**4.** The codification of the Uniform Commercial Code in Pennsylvania is at 13 Pa.C.S.A. References herein will be directly to the UCC, which to the extent relevant here has been adopted by Pennsylvania in its entirety.

(c) the holder of the conflicting security interest receives the notification within five years before the debtor receives possession of the inventory; and

(d) the notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type.

(emphasis added). UCC § 9–312(3).

The nature of the ambiguity has been most succinctly stated by Professor Clark:

Do subparagraphs (i) and (ii) in Rev. § 9–312(3)(b) refer to the phrase "if the holder had filed," or to the phrase "the purchase money secured party gives notification"? If subparagraph (i) refers back to the phrase "if the holder had filed," then the written notification could occur after the purchase money party had filed himself and the key would be the time of delivery of the inventory. If subparagraph (i) refers back to the phrase "the purchase money secured party gives notification," then the notice must predate the purchase money party's own filing.

Clark, ¶ 3.9[3][a] at S3–59.

In the instant case, needless to say, ITT did not notify Hamilton of its purchase money security interest in inventory until after it had filed its financing statement. The parties have stipulated that the events occurred in the following sequence:

1. April 10, 1984—Hamilton perfected its security interest in debtor's current and after acquired property including inventory by filing a financing statement.

2. October 24, 1984 and October 26, 1984—ITT perfects its purchase money security interest in debtor's inventory by filing a financing statement.

3. December 5, 1984—ITT notifies Hamilton of its security interest by certified mail.

4. August and September, 1985—the debtor obtains certain inventory with ITT purchase money; Diaconx subsequently repaid ITT $43,199.06 for that inventory which it now seeks to recover as a preference.

Diaconx contends that ITT's failure to provide notice of its security interest to Hamilton before filing its financing statement constitutes failure to comply with UCC § 9–312(3)(b)(i), thus rendering its security interest subordinate to that of Hamilton. In response, ITT contends that its notice to Hamilton on December 5, 1984 established its priority as to items obtained by Diaconx with ITT funds after that date. In making its argument, ITT relies on apparently the only case which has decided this issue: *King's Appliance & Electronic Inc. v. Citizens & Southern Bank of Dublin*, 157 Ga.App. 857, 278 S.E.2d 733 (Ga. Ct.App.1981).

### III.

Under the prior version of the Uniform Commercial Code, former § 9–312(3), it was clear that a perfected PMSI creditor could obtain priority as to personal property for which it supplied purchase money by giving notice, to other creditors whose security interests would attach to the inventory as after-acquired property, at any time before the debtor obtained possession of the collateral. *See* 12A P.S. § 9–312(3)(b) (repealed 1979); *King's Appliance.* When the Code was revised, however, section 9–312(3) was altered in both form and substance. In particular, this provision was amended to allow a PMSI creditor to retain priority in identifiable cash proceeds of the sale of the secured inventory. Additionally, the language of 9–312(3)(b) was altered so as to determine which holders of competing security interests were entitled to notice. *See King's Appliance*, 278 S.E.2d at 736.

Unfortunately, in making this revision, the drafters also created the ambiguity which is at issue here. Because the statute is indeed ambiguous as to the time limitation for the required notice, it is necessary to examine the intent of the drafters in promulgating and revising the provision at issue. If possible, the statute must be interpreted consistently with its purpose.

*See In re Daily Corp.*, 72 B.R. 489 (Bankr. E.D.Pa.1987).

The original purpose of the notice provision is stated in the Draftmen's Comment to 1962 Official Text appended to former UCC § 9–312:

> The reason for the additional requirement of notification is that typically the arrangement between an inventory secured party and his debtor will require the secured party to make periodic advances against incoming inventory or periodic releases of old inventory as new inventory is received. A fraudulent debtor may apply to the secured party for advances even though he has already given a security interest in the inventory to another secured party. The notification requirement protects the inventory financer in such a situation; if he has received notification, he will presumably not make an advance; if he has not received notification (or if the other interest does not qualify as a purchase money interest), any advance he may make will have priority.

This concern is generally addressed by permitting a PMSI creditor to establish priority over earlier perfected creditors holding competing security interests as long as those competing creditors were notified of the priority claim before the new inventory is received by the borrower. In fact, as discussed above, this was the unambiguous requirement of the 1962 version of § 9–312(3).

Upon revision of this subsection in 1972, the purpose for the changes was expressed in the Draftmen's Statement of Reasons for the 1972 amendments. That statement does not mention any intent by the drafters to alter the time deadline for notification by a PMSI to competing secured creditors. The statement does, however, mention at ¶ (2)(b):

> (b) [Addition of subsection ii to 9–312(3)(b) ] answers the question of the priority status of the security interest in inventory temporarily perfected for 21 days without filing or perfection in a situation which begins with release of a pledged document under Section 9–

304(5). The answer provided is the usual rule that the purchase-money claimant to preserve his priority resulting from the document must give the required notice before the debtor receives possession of the inventory. If the secured party fails to give timely notice, he loses his priority under this subsection.

*See* UCC 9–312(3)(b)(ii).

The language of the Draftsmen's Comment demonstrates that no change was intended in the "usual rule that the purchase money claimant to preserve his priority resulting from the document must give the required notice before the debtor receives possession of the inventory." *Id.* Since subsection (ii) thus cannot be read to work a change of the date on which notice was required in the prior version of the Code, subsection (i), which bears the same relationship to the provision as a whole, similarly should not be read to work such a change. The drafters clearly contemplated that the "usual rule" would remain in effect. *See* Baker, 98 Banking L.J. at 11–13.

Nothing in the revised UCC or in the various Draftmen's statements indicate that a requirement of notice prior to perfection was proposed or intended. Had the drafters intended a major change in the 1962 code, they would have said so more clearly. *See Young v. Kaye*, 443 Pa. 335, 279 A.2d 759 (1971). Absent a clear statement of intention to create an important substantive change in prior law, basic principles of statutory construction require that the revised law be interpreted consistently with the prior provision. 1A Sands, *Sutherland Statutory Construction*, § 22.30 p. 266 (4th Ed. 1985): "an amendatory act is not to be construed to change the original act or section further than expressly declared or necessarily implied". *Cf. Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); *In re Paolino*, 75 B.R. 641 (Bankr.E.D.Pa.1987).

The conclusion reached here is consistent with the opinion of the only prior case which has considered the issue, *King's Ap-*

*pliance*,[5] as well as with the views of the various commentators. Clark at 53–59. Baker at 10.

## IV.

Thus for the purposes of this preference action, I hold that ITT has a valid purchase money security interest in inventory of Diaconx and that this lien has priority over the security interest held by Hamilton Bank.

Since this determination may significantly affect the outcome of Diaconx' preference action, it is appropriate to set a status conference in order to identify those issues remaining to be tried.

An appropriate order shall be entered.

---

5. I cannot, however, completely endorse the reasoning of that case insofar as it placed reliance in the language of UCC 9–312(3)(d) which contemplates that a notification may state "that the person giving the notice *has* ... a purchase money security interest in inventory" (emphasis added). The court in *King's Appliance* reasons that the use of past tense indicates that the drafters contemplated notice after filing. However, I note that a PMSI holder "has" an unperfected security interest prior to filing.