## 61114. KING'S APPLIANCE & ELECTRONICS, INC. v. CITIZENS & SOUTHERN BANK OF DUBLIN.

CARLEY, Judge.

The instant appeal involves priority between conflicting security interests in the same collateral and interpretation of Code Ann. § 109A-9—312. The relevant facts are as follows: On August 3, 1978, The Citizens and Southern Bank (C&S) filed a financing statement listing itself as the secured party and Randall B. Helton, d/b/a United TV (Helton) as the debtor. The financing statement covered the following types of property: "All equipment of the Debtor of every description used or useful in the conduct of the Debtor's business, now or hereafter existing or acquired, and all accessories, parts and equipment now or hereafter affixed thereto or used in connection therewith. All inventory, accounts receivable and contract rights of borrower whether now or hereafter existing or acquired; all chattel paper and instruments, whether now or hereafter existing or acquired, evidencing any obligation to borrower for payment for goods sold or leased or services rendered; and all products and proceeds of any of the foregoing."

On November 27, 1978, Helton entered into an "Inventory Financing Agreement" with Appliance Buyers Credit Corporation (ABCC) "to finance the acquisition by [Helton] of certain merchandise of inventory from time to time from" King's Appliance & Electronics, Inc. (King's Appliance). On November 29, 1978, ABCC filed a financing statement listing itself as the secured party and Helton as the debtor. The financing statement covered the following property: "Television sets, phonographs, stereos, radios and combinations, tape recorders, organs, pianos and other musical

instruments, refrigerators, freezers, ice makers, dish and clothes washers and dryers, ranges, food waste disposers, trash compactors, dehumidifiers, humidifiers, room air conditioners, heating and air conditioning equipment, vacuum cleaners, and other types of mechanical or electrical, commercial, household or industrial equipment and accessories or replacement parts for any of such merchandise." On December 1, 1978, pursuant to Code Ann. § 109A-9—312 (3) (d), ABCC sent notification to C&S that it "has or expects to acquire a purchase money security interest in the inventory of [Helton]" and described the inventory by item or type.

Thereafter, King's Appliance apparently began to ship to Helton merchandise which had been financed by ABCC as well as certain merchandise on consignment. The security interest held by ABCC in that part of Helton's inventory financed under the agreement with ABCC was eventually assigned to King's Appliance. When Helton subsequently defaulted on his obligations to both C&S and King's Appliance, C&S took possession of all of Helton's inventory and gave notice of its intent to sell the inventory and apply the amount realized to Helton's indebtedness to it. King's Appliance, contending that as ABCC's assignee it held a perfected security interest in part of the inventory under Code Ann. § 109A-9—302 (2), filed a complaint seeking, in effect, a determination that its security interest in the inventory had priority over that of C&S under Code Ann. § 109A-9—312 (3). C&S answered and, after discovery, both parties moved for summary judgment. The trial court entered its order granting summary judgment to C&S and denying summary judgment to King's Appliance. The order was based upon the trial Court's following interpretation of Code Ann. § 109A-9—312: "Subpart (3) (b) (i) absolutely requires the purchase money secured party to give notification in writing to the holder of the conflicting security interest *before* the date of the filing [of the financing statement] by the purchase money secured party ... The notice given C&S [dated December 1, 1978] was *after* the filing of the security interest of [ABCC on November 29, 1978]. . . Failure to give a timely notice prevents priority from being accorded the purchase money security interest . . ." King's Appliance appeals, urging that the trial court misconstrued Code Ann. § 109A-9—312 (3) (b) and that summary judgment was erroneously granted to C&S and denied to it.

1. Code Ann. § 109A-9—312 (3) (b) provides: "A perfected purchase money security interest in inventory has priority over a conflicting security interest in the same inventory and also has priority in identifiable cash proceeds received on or before the delivery of the inventory to a buyer if . . . the purchase money secured party gives notification in writing to the holder of the conflicting

security interest if the holder had filed a financing statement covering the same types of inventory, (i) *before the date of the filing made by the purchase money secured party,* or (ii) before the beginning of the 21-day period where the purchase money security interest is temporarily perfected without filing or possession . . ." (Emphasis supplied.) The trial court interpreted the emphasized language of this statute as requiring that in order for the purchase money security interest to be afforded priority the notification must be given to the holder of the conflicting security interest *before* the purchase money secured party files (perfects) his interest. While the 1978 amendments to Code Ann. § 109A-9—312 (3) are less than a model of clarity, we conclude that the trial court erred in construing Ga. L. 1978, pp. 1081, 1111.

Under Ga. L. 1962, pp. 156, 406, the former Code Ann § 109A-9—312 (b), in order for a purchase money security interest in inventory to gain priority over a conflicting prior security interest in the same collateral it was necessary that the purchase money secured party notify any other secured party whose security interest was either *known* to him *or* had been *perfected* by a previously filed financing statement covering the debtor's inventory. With reference to timing, under the former law, this notification had to be received by the secured party holding the prior security interest in the inventory *before the debtor received possession of the collateral covered by the purchase money security interest.* The purpose behind this notification system was clear. "The reason for the additional requirement of notification is that typically the arrangement between an inventory secured party and his debtor will require the secured party to make periodic advances against incoming inventory or periodic releases of old inventory as new inventory is received. A fraudulent debtor may apply to the secured party for advances even though he has already given a security interest in the inventory to another secured party. The notification requirement protects the inventory financer in such a situation: if he has received notification, he will presumably not make an advance; if he has not received notification (or if the other interest does not qualify as a purchase money interest), any advance he may make will have priority." Anderson, U. C. C. Vol. 4, § 9-312:1, p. 355 (2d Ed. 1977). Thus, because the timing of the notification of a purchase money security interest was tied to *the date the debtor received the possession* of the purchase money financed inventory the previously secured party was afforded adequate protection and the debtor was allowed to secure additional inventory from other sources. See White & Summers, U. C. C., § 25-5, p. 913 (1972).

Current Code Ann. § 109A-9—312 (3) (b), which the trial court

interpreted as requiring the purchase money secured party to give notification *before* he files his financing statement, is not subject to that interpretation. While the 1978 "amendments" to Code Ann. § 109A-9—312 (3) made changes in the notification procedure they did *not* effectuate a change in the timing of the notification. That the notification need not *precede* the filing is clear, if for no other reason than that Code Ann. § 109A-9—312 (3) (d) contemplates that the notification may state that a purchase money security interest "has" been acquired in the debtor's inventory. Surely then filing may precede the notification envisioned under the statute. In our opinion the 1978 amendment to Code Ann. § 109A-9—312 (3) (b) merely redefines *which holders* of conflicting security interests are entitled to receive notification: those who had filed a financing statement covering the inventory of the debtor prior to the date the purchase money secured party filed his statement and those who had filed statements prior to the beginning of the 21-day period contemplated by Code Ann. § 109A-9—304 (5). Thus Ga. L. 1978, pp. 1081, 1111, amended the former law only so as *to redefine and limit the class* of secured parties entitled to receive notification of the purchase money security interest to those who had previously *filed* a financing statement covering the same types of inventory. Subsections (i) and (ii) of existing Code Ann. § 109A-9—312 (3) (b) are descriptive of the secured parties who must be notified of the subsequent purchase money secured interest; those subsections do not establish that the purchase money secured party must give notification of his interest before he files his financing statement. No other change in the previous law was contemplated or effectuated by the 1978 amendment to Code Ann. § 109A-9—312 (3) (b) other than this change in the class of those previously secured parties entitled to receive notification. The timeliness of the notification continues to be determined by the date the debtor *receives possession* of the inventory secured by a purchase money security interest. Under current Code Ann. § 109A-9—312 (3) (c) notification is timely if the holder of the conflicting prior security interest receives it no more than five years before the date "the debtor receives possession of the inventory."

In summary, Code Ann. § 109A-9—312 (3) provides that a perfected purchase money security interest in inventory has priority over a conflicting prior security interest in the same property if:

(a) The purchase money security is perfected at the time the debtor receives possession of the inventory; and

(b) The purchase money secured party gives written notice to those holders of conflicting prior security interests who have perfected their interest in the same types of inventory before the

purchase money secured party perfects his; and

(c) The holder of the previously perfected security interest receives the notification no more than five years before the date the debtor receives possession of the inventory secured by the purchase money interest; and

(d) The notification states that a purchase money security interest in the debtor's inventory, described by item or type, has been or is expected to be acquired.

Insofar as the trial court in the instant case misconstrued Code Ann. § 109A-9—312 (3) and granted summary judgment to C&S on the basis of this misconstruction, the judgment must be reversed.

We conclude, however, that summary judgment for King's Appliance was not authorized under the evidence. Under the proper construction of Code Ann. § 109A-9—312 (3), even if C&S has been given proper notification in compliance with subsections (b) and (d), the record before us shows neither the date upon which Helton, the debtor, received possession of the inventory in which King's Appliance holds the assigned purchase money security interest nor the date that C&S received notification of that security interest. Under subsections (a) and (c) of the current Code Ann. § 109A-9—312 (3) the security interest of King's Appliance is entitled to priority only to that part of the inventory received by and in the possession of Helton 1) after the purchase money security interest therein was first perfected *and* 2) after C&S received notification. If Helton received possession of any items of inventory before a purchase money security interest therein was perfected *or* before C&S received notification of the conflicting purchase money security interest in Helton's inventory the purchase money security interest of King's Appliance in those items is not entitled to priority over the prior security interest of C&S in Helton's inventory. We conclude, therefore, that there remain genuine issues of material fact for jury resolution and it was not error to deny the motion of King's Appliance for summary judgment.

2. All we have held in Division 1 of this opinion relates solely to that portion of Helton's inventory in which King's Appliance held an assigned purchase money security interest. The interest of King's Appliance in inventory *consigned* by it to Helton is an interest which differs significantly from a purchase money security interest. See generally *Parks v. Atlanta News Agency,* 115 Ga. App. 842, 845-846 (156 SE2d 137) (1967). Since any "interest" of King's Appliance in goods consigned by it to Helton is its own, it was necessary that King's Appliance in its capacity as consignor comply with statutory requirements in order to protect that interest and it cannot rely upon the compliance of its assignor with Code Ann. § 109A-9—312 (3) to

afford its own interest in consigned goods priority over a previously perfected security interest in Helton's inventory. As assignee of ABCC, King's Appliance holds no more than its assignor held — rights in such of Helton's inventory as was subject to ABCC's purchase money security interest — and it is afforded no protection under Code Ann. § 109A-9—312 (3) in Helton's inventory in which ABCC held no purchase money security interest.

Under Code Ann. § 109A-2—326 inventory consigned by King's Appliance to Helton is "subject to" C&S's claim unless King's Appliance (a) complied with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or (b) can establish that Helton was generally known by his creditors to be substantially engaged in selling the goods of others, or (c) complied with the filing provisions of the Article on Secured Transactions.

As we interpret Code Ann. § 109A-2—326, items in Helton's inventory on consignment from King's Appliance are "subject to" C&S's prior security interest unless one of these three factors is present. With reference to Code Ann. § 109A-2—326 (3) (c), the record demonstrates no filing by King's Appliance under Code Ann. § 109A-9—408 or compliance with Code Ann. § 109A-9—114. Apparently there was none, since King's Appliance merely advances the erroneous argument that ABCC's compliance with Code Ann. § 109A-9—312 is compliance with Code Ann. § 109A-2—326 (3) (c). There is, therefore, no genuine issue of material fact remaining in this regard. However, the record before us contains no evidence establishing that no genuine issue of material fact yet remains with regard to the presence or applicability of either factor comtemplated by Code Ann. § 109A-2—326 (3) (a) or (b). If either factor is present in the underlying consignment of items of inventory, the consigned goods of King's Appliance are not "subject to" C&S's prior security interest in Helton's inventory. See White and Summers, U. C. C. § 22-4, p. 769 (1972). While at a trial on the merits the burden will be on King's Appliance to prove that its inventory on consignment to Helton is free from C&S's security interest under Code Ann. § 109A-2—326 (3) (a) or (b), Anderson, U. C. C., Vol. 1, § 2-326:22, p. 787 (2d Ed. 1977), on summary judgment the burden was on C&S to prove the nonapplicability of those provisions. Code Ann. § 81A-156. This burden was not met in the instant case and it was error to grant C&S summary judgment as to Helton's inventory which was on consignment from King's Appliance. See *Geoghagan v. Comm. Credit Corp.,* 130 Ga. App. 828 (204 SE2d 784) (1974).

3. There remain genuine issues of material fact with regard to the conflicting interests in the inventory of Helton. Neither C&S nor King's Appliance has demonstrated as a matter of law entitlement to

the inventory under their respective claims to it whether under Code Ann. §§ 109A-9—312 (3) or 109A-2—326 (3). Therefore, the trial court erred in granting summary judgment to C&S but not in denying it to King's Appliance.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Banke, J., concur.*

DECIDED MARCH 11, 1981.

*Eric L. Jones,* for appellant.
*Morris Robertson,* for appellee.