In re Edmund Joseph AUCLAIR and Teresia Dianne Auclair, Debtors.

Tom McGREGOR, Trustee, Plaintiff,

v.

James E. "Luke" JACKSON, Defendant.

Bankruptcy No. 90–02278–APG.
Adv. No. 90–0112–APG.

United States Bankruptcy Court,
M.D. Alabama.

Jan. 25, 1991.

Von G. Memory, Montgomery, Ala., for trustee.

W. Bartlett Taylor, Andalusia, Ala., for defendant.

Tom McGregor, trustee.

## OPINION ON COMPLAINT TO RECOVER PROPERTY

A. POPE GORDON, Bankruptcy Judge.

The trustee commenced this action on July 31, 1990 to require the defendant to turn over property of the estate pursuant to 11 U.S.C. § 542.

The trustee alleged that Luke Jackson had removed some firearms from the debtors' store after the debtors filed their joint petition in bankruptcy on June 28, 1990.

The action came on for trial on December 11, 1990 after which the parties submitted briefs to the court on the issues of law raised at the trial.[1]

The undisputed facts are as follows.

The debtors maintained a place of business in Covington County, Alabama from which they operated a gun shop and convenience store named Heath Grocery and Final Chapter Firearms.

---

1. The findings of fact and conclusions of law contained in this opinion are made in accordance with Bankruptcy Rule 7052. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

In November, 1989, Luke Jackson delivered about seventy firearms to the debtors to sell on consignment.[2]

Jackson removed these firearms from the debtors' store after the petition was filed on June 28, 1990.

The trustee claims that the firearms are property of the bankruptcy estate under 11 U.S.C. § 541.

Defendant Jackson claims ownership of the guns under the consignment agreement.[3]

Both parties agree that *Ala. Code* § 7–2–326(3) (1975) regarding consignments applies to the facts of this case.[4]

Under that subsection, goods delivered on consignment are "deemed to be on sale or return." Thus, by deeming the consignee a *purchaser* of the goods, the consignor is precluded from asserting an *ownership* claim to the goods *vis-a-vis* the consignee's creditors.

■ Applying that section to the instant case, Jackson is precluded from asserting his ownership of the firearms *vis-a-vis* the trustee.[5] However, the subsection is not

---

**2.** These firearms included shotguns, handguns, rifles, and gun scopes. Jackson contends that some of the firearms delivered to the debtors were not to be sold. This argument will be discussed *infra*.

**3.** The consignment agreement is dated November 11, 1989 and states as follows:

> I Edd Auclair have received a number of guns, of which a list will be attached and I will sign.
> As I sell a gun I will pay James E. "Luke" Jackson or Betty King with them giving me a reciept [sic] for that particular gun.
> If something should happen to Luke Jackson the guns are to be returned to Betty King or at that time Betty King and Edd Auclair can enter into an agreement.
> If something should happen to Edd Auclair, Diane agrees to return all guns that have not been paid for to, Luke Jackson or Betty King, and pay for any that has [sic] been sold.

The agreement is signed by Jackson, Betty King, and the two debtors.

**4.** Subsection (3) states in part as follows:

> Where goods are delivered to a person *for sale* and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return (emphasis supplied).

Jackson contends that some of the firearms were not delivered for sale but only for display. These guns, particularly some of the Browning shotguns, were commemorative and antique items holding some sentimental interest for Jackson. However, the credible testimony reflects that all of the guns were subject to sale by the debtors for the following reasons.

None of the allegedly exempt firearms were omitted from the list attached to the consignment agreement. The consignment agreement contained no restriction on the sale of firearms itemized on the list.

Edmund Auclair testified, "[Luke Jackson] never came right out and told me not to sell any of them, but I have known Luke for quite a while, and I knew that it was probably a good decision for me not to sell any of *those* guns (emphasis added)."

However, Auclair also testified, when asked whether the Browning guns could be sold under the right circumstances, "Yes, they could have been. That was entirely up to me." Again, Auclair testified when asked about the Browning guns, "To the best of my knowledge, I was never told not to sell them. I was never told specifically to sell them, but I was never told not to sell them. The decision I made on that was just one of my own decisions."

Although Auclair testified that *he* did not put a price tag on these guns and did not offer them for sale, when questioned about selling the guns, he testified that "Jackson didn't restrict me in any way as far as any of the guns on that list."

The conflict in the testimony of Jackson and Auclair presents a credibility issue. The testimony of Auclair is accepted as credible because of the interest of Jackson in removing firearms from the operation of the consignment agreement and the lack of other evidence to support his position.

The court concludes that all of the guns on the list were subject to the consignment agreement and, therefore, the provisions of § 7–2–326(3).

**5.** The trustee may assert the rights of a lien creditor pursuant to 11 U.S.C. § 544(a) which states in pertinent part as follows:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on

applicable to a consignor who—

(a) Complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign, or

(b) Establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others, or

(c) Complies with the filing provisions of the article on secured transactions (article 9).

Section 7–2–326(3).

Jackson is not protected under (a) because Alabama does not have a sign law applicable to consignments. *Bischoff v. Thomasson*, 400 So.2d 359 (Ala.1981).[6] Jackson is not protected under (c) because he did not comply with the filing provisions of article nine.

Jackson contends, but has failed to prove, that he is protected under (b). The evidence does not reflect that the debtors were "generally known by [their] creditors to be substantially engaged in selling the goods of others."

Jackson admitted that he did not notify any of the Auclairs' creditors that the firearms were placed with the Auclairs on consignment. The evidence reveals, *at best*, that only one of the Auclairs' eighteen creditors had knowledge of the consignment.[7] The court concludes that the debtors were not "generally known by [their] creditors to be substantially engaged in selling" consigned firearms.

The court holds that the firearms in question are property of this bankruptcy estate which the trustee may sell under 11 U.S.C. § 363.

A separate order will enter requiring Jackson to deliver the firearms to the trustee and "account for, such property or the value of such property" [8] as required by 11 U.S.C. § 542(a).

██ Jackson will have an unsecured claim for the value of the property returned to the trustee, for which he may file a proof of claim in this case.

## FINAL JUDGMENT ON COMPLAINT TO RECOVER PROPERTY

In accordance with the opinion entered this day, it is hereby

ORDERED that the trustee's January 14, 1991 motion to strike the post-trial Auclair affidavit is GRANTED. It is further

ORDERED that with respect to all of the property delivered to the debtors under the consignment agreement with the defendant and removed by the defendant from the debtors' premises after the debtors filed a petition in bankruptcy, the defendant "shall deliver to the trustee, and account for, such property or the value of such property" in accordance with 11 U.S.C. § 542(a).

---

all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.] In the consignment context, the trustee asserts the state law rights of a hypothetical lien creditor to "deny the consignor's ownership claim." This assertion "has the effect of creating property for the estate." Hillinger, *The Treatment of Consignments in Bankruptcy*, 6 Bankr.Dev.J. 73, 103 (1989).

6. Alabama did not have a consignment sign law in 1981 when this case was decided. It does not appear that such a law has since been enacted.

7. Edmund Auclair testified that he "seemed to remember mentioning to [Lloyd Odom] that a lot of the guns were [on] consignment," although he did not tell him anything about the consignment agreement because, as he said, "[I]t wasn't any of his business."

Jackson attached an affidavit from Edmund Auclair to his post-trial brief. In the affidavit, Auclair states that creditor Odom was fully aware of the consignment because "I placed burglar bars on the windows of my shop for the express purpose of keeping the property safe. *This* information was relayed to Mr. Odom by me personally (emphasis supplied)."

The trustee moved to strike the affidavit. The trustee's motion is due to be granted; however, the affidavit, if considered, would have no effect on the outcome of this case. Possibly Odom knew of the consignment, but there is no evidence that any other creditors had the requisite knowledge.

8. According to the testimony of Jackson, the property has a value of about $20,000; however, no appraisal to determine the actual value has been conducted.