In the Matter of HIGH–LINE
AVIATION, INC., Debtor.

In the Matter of HIGH–LINE
AVIATION LTD., Debtor.

In the Matter of HIGH–LINE AERO
INVENTORIES LTD., Debtor.

ATG AEROSPACE, INC., Plaintiff,

v.

HIGH–LINE AVIATION LTD., High–
Line Aviation, Inc., High–Line Aero In-
ventories Ltd., Robert Trauner, in his
capacity of Chapter 11 Trustee for
High–Line Aviation Ltd., High–Line
Aviation, Inc., and High–Line Aero In-
ventories Ltd., Stanchart Business
Credit, Inc., and Standard Chartered
Bank of Canada, Defendants.

Bankruptcy Nos. A91–77924–
ADK to A91–77926–ADK.
Adv. No. 92–6094.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 18, 1992.

Charles C. Stebbins, III, Warlick, Tritt & Stebbins, Augusta, GA, for plaintiff.

Charles E. Campbell, Henry F. Sewell, Jr., Hicks, Maloof & Campbell, Atlanta, GA, for Robert Trauner.

Rufus T. Dorsey, IV, Jack C. Basham, Jr., Parker, Hudson, Rainer & Dobbs, Atlanta, GA, for Stanchart Business Credit, Inc. and Standard Chartered Bank of Canada.

## MEMORANDUM OF OPINION AND ORDER

A. DAVID KAHN, Chief Judge.

Before the Court are two cross-motions for summary judgment filed by Robert Trauner, Chapter 11 Trustee for the Debtors, High–Line Aviation, Inc. ("HAI"), High–Line Aviation Ltd. ("HAL") and High–Line Aero Inventories Ltd. and two secured creditors of the Debtors, Stanchart Business Credit, Inc. ("Stanchart") and Standard Chartered Bank of Canada ("Standard") (collectively "Secured Creditors"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). The Court will grant the Trustee's motion and will grant the Secured Creditors' motion in part and deny in part based upon the following findings and conclusions.

### FACTS

On or about April 1, 1990, ATG Aerospace, Inc. ("Plaintiff" or "ATG") entered into an agreement with HAL for the consignment of certain aircraft parts ("Parts") ("Consignment Agreement"). The Consignment Agreement provided that the Parts were to be stored on HAL's premises in Ontario, Canada and were not to be removed from Canada without ATG's permission. Consignment Agreement, Article

III(A), Exhibit A to ATG's Complaint. The Consignment Agreement also required HAL to designate the Parts as ATG's property. *Id.* Finally, the Consignment Agreement provided that it would be governed by the laws of Ontario. Consignment Agreement, Article XVII(A).

The Parts were moved from Ontario to Georgia in January 1991. Trustee's Statement of Material Facts as to Which There is No Genuine Issue to be Tried ("Trustee's Undisputed Facts"), ¶ 10 and Response of ATG Aerospace, Inc. to Statement of Allegedly Undisputed Material Facts Submitted by Trustee ("ATG's Response"), p. 3. After their removal, the Parts were stored in Atlanta, Georgia at a facility operated by the three Debtors ("Atlanta Facility"). On August 22, 1991, the Secured Creditors took possession of the Parts pursuant to certain security agreements they had with HAI and HAL. On August 28, 1991, ATG terminated the Consignment Agreement and demanded the return of the Parts. On or about September 24, 1991, each Debtor filed a Chapter 11 petition. Shortly thereafter, the Secured Creditors delivered the Parts to the Trustee. ATG filed its Complaint on January 9, 1992 naming as Defendants the Secured Creditors, the Debtors and the Trustee. ATG asserts that it is the owner of the Parts and that the Secured Creditors and the Trustee obtained possession of the Parts in violation of the Consignment Agreement. ATG seeks an order requiring the Debtors and the Trustee to turn over the Parts to ATG.

On March 7, 1990, Standard entered into a revolving credit facility and security agreement with HAL, and Stanchart entered into a revolving credit facility and security agreement with HAI (collectively "Security Agreements"). Pursuant to these Security Agreements, HAL and HAI granted Standard and Stanchart, respectively, a first priority security interest in all or substantially all of their assets. Security Agreement, p. 11, Exhibits A and B to Stanchart's Answer. The Security Agreements covered after-acquired property. *Id.* Standard and Stanchart filed financing statements on February 21, 1990 and March 23, 1990 representing their respective security interests. State of Georgia Uniform Commercial Code Financing Statement Form 1, Exhibit C to Stanchart's Answer. HAL and HAI defaulted on repayment of their loans to Standard and Stanchart, and on August 22, 1991 the Secured Creditors accelerated the indebtedness and took possession of the Parts. On August 28, 1991, the Secured Creditors received a letter from ATG in which ATG asserted that it had consigned the Parts to HAL and was entitled to possession of the Parts. Affidavit of Margaret Ceconi ("Ceconi Aff."), Exhibit F. After Debtors filed their Chapter 11 petitions on September 24, 1991, the Secured Creditors turned over the Parts to the Trustee. (Trustee's Undisputed Facts at 10) and (ATG's Response at 3). On October 31, 1991, Standard assigned to Stanchart all of its right, title and interest in the Security Agreement between Standard and HAL and the financing statements representing those interests. (Ceconi Aff.), Exhibit E. As of February 12, 1992, Debtors were indebted to Stanchart in the principal amount of $3,769,139.11 plus accrued interest of $148,554.86. (Ceconi Aff. at 16).

Stanchart asserted a counterclaim against ATG and cross-claims against the Trustee and the Debtors. Stanchart asserts that ATG delivered the Parts to Debtors to be sold in the ordinary course of Debtor's business and that Debtors have paid ATG, in whole or in part, for the Parts. Stanchart alleges that ATG failed to file a financing statement or notify Standard or Stanchart of its interest in the goods and asserts that therefore Stanchart's perfected security interest in the Parts has priority over ATG's interest. Stanchart seeks an accounting of all payments made by the Debtors to ATG and asserts that ATG is liable for such payments, at least to the extent of Stanchart's claim.

The Trustee answered Stanchart's cross-claim admitting that Stanchart has a fully perfected, first priority security interest in the Parts. The Trustee asserts that ATG is not entitled to possession of the Parts and has, at most, an unsecured claim

against Debtors for the unpaid purchase price. The Trustee asks the Court to determine the priority of the asserted interests of ATG, Stanchart and the Trustee in the Parts and to issue an order authorizing the Trustee to sell the Parts with Stanchart's lien to attach to the proceeds.[1] ATG replied to the Trustee's counter-claim admitting that it has not filed a financing statement or any other public notice in the United States or Canada evidencing its asserted interest in the Parts.

The Trustee moved for summary judgment on all issues raised by ATG's Complaint. Stanchart moved for summary judgment on ATG's Complaint and the Trustee's cross-claim against it.

## DISCUSSION

■ The first issue is whether the Court should apply Ontario law or Georgia law in this proceeding. When a bankruptcy court considers an issue that is not addressed by federal law and does not implicate compelling federal interests, it is appropriate for the court to apply the choice of law rules of the state in which it sits to determine the applicable substantive law.[2] *Bi–Rite Enterprises, Inc. v. Bruce Miner Co., Inc.*, 757 F.2d 440, 442 (1st Cir.1985); *Compliance Marine, Inc. v. Campbell (In re Merritt Dredging Co., Inc.)*, 839 F.2d 203, 206 (4th Cir.1988), *cert. denied*, 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988); *Woods–Tucker Leasing Corp. v. Hutcheson Ingram–Dev. Co.*, 642 F.2d 744, 748–49 & n. 8 (5th Cir.1981).

The transactions at issue are transactions in goods. Official Code of Georgia Annotated ("O.C.G.A.") § 11–2–105. Accordingly, the Uniform Commercial Code ("U.C.C."), as enacted in Georgia, applies and furnishes the appropriate choice of law

provision. O.C.G.A. § 11–2–102. The choice of law provision for transactions governed by the U.C.C. is O.C.G.A. § 11–1–105. It provides that:

(1) Except as provided hereinafter in this Code section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this title applies to transactions bearing an appropriate relation to this state.

(2) Where one of the following provisions of this title specifies the applicable law, the provision governs and a contrary agreement is effective only to the extent permitted by the law (including the conflict of law rules) so specified: Perfection provisions of the article of this title on secured transactions (Article 9 of this title). Code Section 11–9–103.

O.C.G.A. § 11–1–105.

The Court will first look to the nature of the interests that ATG and Stanchart assert and determine whether these asserted interests have any impact on the choice of law issue. Stanchart asserts that it has a perfected security interest in the Parts. Under the U.C.C. issues involving "... perfection and the effect of perfection or nonperfection of a security interest in collateral are governed by the laws of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected." O.C.G.A. § 11–9–103(1)(b). Standard and Stanchart filed their financing statements in Georgia on February 21, 1990 and March 23, 1990, respectively. HAL transported the Parts

---

1. By its Order of January 24, 1992 the Court approved a consignment agreement entered into by the Trustee as consignor and AAA Interair, Inc. as consignee to sell certain inventory in the Debtors' possession. However, the Court excepted the Parts from its Order and required the Trustee to retain possession of the Parts until further order.

2. At least one court has held that a bankruptcy court is not constrained to apply the choice of law rules of the forum state but may apply the

law it considers most relevant to the issue. *In re Crist*, 632 F.2d 1226, 1229 (5th Cir.1980), *cert. denied*, 451 U.S. 986, 101 S.Ct. 2321, 68 L.Ed.2d 844 (1981) *and cert. denied*, 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981). In this case the Court considers the Uniform Commercial Code the most appropriate law to apply to the priority dispute between ATG and HAL, the same conclusion reached by application of the Georgia choice of law rules.

to Georgia in January, 1991. Accordingly, the last act necessary to determine whether Stanchart has a perfected security interest was the removal of the Parts to Georgia. Section 11–9–103(1)(b) requires the Court to look to Georgia law to determine whether Stanchart's security interest in the Parts is perfected. The Court has examined the Security Agreements and the financing statements filed by the Secured Creditors and concludes that Stanchart has a perfected security interest in the Parts.

■ ATG asserts that it has a consignor's interest in the Parts. Unlike issues involving perfection of a security interest, the validity and effect of a consignment agreement is not governed by any of the exceptions enumerated in O.C.G.A. § 11–1–105(2). Rather, the general choice of law provision of the U.C.C., O.C.G.A. § 11–1–105(1), is used to determine the applicable substantive law. As stated previously, O.C.G.A. § 11–1–105(1) provides that parties to a transaction may provide that the law of any jurisdiction will govern their rights under their agreement as long as the jurisdiction bears a reasonable relationship to their transaction. The Consignment Agreement states that it "... will be governed by and construed in accordance with the laws of the Province of Ontario, Canada." Consignment Agreement, Article XVII(A). The Court finds that the consignment transaction between ATG and HAL bears a reasonable relationship to Ontario Canada. The Court will therefore apply Ontario law to determine the validity and effect of ATG's interest under the Consignment Agreement.

ATG has submitted two opinions of the Ontario Supreme Court concerning consignment agreements. In these opinions, the court employed a two-step analysis to determine the relationship created by these agreements. First, the court determined whether the agreement was a consignment or a sale. *Saunders Re Stephanian's Persian Carpets LTD.*, (1980), 1 P.P.S.A.C. 119; *Saunders Re Toyerama*, (1980), 1 P.P.S.A.C. 126. If the agreement was determined to be a consignment, the court would then look to the substance of the transaction to determine whether the agreement was a true consignment or one intended as security for the consigned items. *Id.* The court stated that if the agreement serves no function other than to protect the consigned goods from the consignee's creditors, then the consignment is merely intended as security. *Id.* However, if the agreement serves a purpose other than to secure the purchase price of the goods, then the agreement was a true consignment, and the consignor's ownership interest in the goods had priority over the interests of the consignee's secured creditors. The court found that the agreements in *Re Stephanian's Carpets* and *Re Toyerama* were both true consignments.

■ Applying this analysis to the case at bar, the Court finds that the Consignment Agreement was a true consignment. The Consignment Agreement identified ATG as the consignor and HAL as the consignee. It provided that ATG would consign the Parts to HAL. HAL would sell the Parts to an end user and obtain from the end user the part that had been replaced. HAL would give the part to ATG who would repair it. ATG would then consign the repaired part back to HAL. HAL received a commission for each part it sold. Deposition of Gabriel Alony, pp. 11–13. The undisputed evidence shows that the Consignment Agreement facilitated these exchanges and was not intended merely as security for the Parts. Accordingly, the Court concludes that the Consignment Agreement was a true consignment of the Parts from ATG to the Debtors.

The Court will now determine the effect that the Debtors' removal of the Parts from Ontario to Georgia had on ATG's interest in the Parts. ATG asserts that a consignor is not required by Ontario law to do anything to protect its interests in consigned goods from third parties. The Trustee has stated that for purposes of this Motion he will concede that ATG's interpretation of Ontario law in this regard is correct. Trustee's Reply Brief, p. 7, n. 1.

■ ATG asserts that the choice of law provision in the Consignment Agreement requires the Court to apply Ontario law to

the priority dispute between ATG and Stanchart. The Court does not agree. While the choice of law provision in the Consignment Agreement is binding on ATG and the Debtors, O.C.G.A. § 11–1–105, it is not binding on Standard and Stanchart because they were not parties to it. *See Vintero Corp. v. Corporacion Venezolana De Fomento (In re Vintero Corp.),* 31 U.C.C.Rep.Serv. 1145, 1148, n. 8 (Bankr. S.D.N.Y.1980). Thus, while the U.C.C. directs the Court to apply Georgia law to determine the validity and effect of Stanchart's interest and directs the Court to apply Ontario law to determine the effect and validity of ATG's interest, it does not contain a specific choice of law provision for the resolution of the priority dispute between ATG and Stanchart. Accordingly, the Court will return to O.C.G.A. § 11–1–105(1) and apply Georgia law, provided the transactions involved bear an appropriate relation to Georgia.[3]

■ Most of the events relevant to these transactions occurred in Georgia. The Parts were located at the Debtors' facility in Georgia until they were seized by Standard and Stanchart just prior to Debtors' Chapter 11 filings. The Security Agreements between the Debtors and the Secured Creditors were executed and perfected in Georgia. Georgia therefore has strong contacts with the transactions that gave rise to the priority dispute between ATG and Stanchart. In addition, the policies promoted by the U.C.C. are implicated by this dispute. The U.C.C. discourages the creation and maintenance of secret liens in collateral. To this end, O.C.G.A. § 11–9–103(3)(e) provides that a perfected security interest in collateral brought into another jurisdiction remains perfected in the new jurisdiction for up to four months despite the secured creditor's failure to reperfect its interest according to the laws of the new jurisdiction. This section reflects a policy of protecting a perfected security interest as long as the secured creditor exercises diligence and care in monitoring its interest. The Court's desire to promote this policy weighs strongly in the Court's decision to apply Georgia law. Applying Ontario law as it has been presented by ATG would enable a consignor to assert its interest in consigned goods years after their removal from Ontario to the United States, thereby frustrating the policy against secret liens promoted by the U.C.C. Therefore, the Court finds that the contacts these transactions have with Georgia and the competing equities of this case both favor application of Georgia law. The Court will now consider the evidence proffered by the parties and determine whether ATG protected its consignor's interest from Stanchart's security interest under Georgia law and whether summary judgment is proper on any of the issues raised by the motions for summary judgment.

Federal Rule of Civil Procedure 56, made applicable herein by Bankruptcy Rule 7056, provides for the granting of summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it "... might affect the outcome of the suit under the governing (substantive) law...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute of fact is genuine "... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party has the burden of establishing its right to summary judgment. *Clark v. Union Mut. Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982); *United States Steel Corp. v. Darby,* 516 F.2d 961, 963 (5th Cir.1975).

In determining whether there is a genuine issue of any material fact the court must view the evidence in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144,

---

**3.** Some courts have applied the law of the state where the collateral is located to determine the priority of a creditor's interests in that collateral. *Friederich v. Dockery,* 209 F.2d 677, 679 (8th Cir.1954); *Duck v. Wells Fargo Bank, Nat. Ass'n. (In re Spectra Prism Industries, Inc.),* 28 B.R. 397, 399 (Bankr. 9th Cir.1983). While this Court agrees that the location of the collateral is an important contact, for purposes of its analysis in this case the Court prefers to take into account all the contacts between these transactions and the state of Georgia.

157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985); *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir.1984). The moving party bears the burden of identifying those evidentiary materials listed in Federal Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(e). Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion must go beyond the pleadings and present materials described in Federal Rule 56(c) showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. In addition, the standard of proof that applies to the substantive claim applies on motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559, 1572 (11th Cir.1987). If the moving party seeks summary judgment on a claim or defense of the nonmoving party he need only show that an essential element of that claim or defense is lacking in order to receive summary judgment. *Real Estate Financing v. Resolution Trust Corp.*, 950 F.2d 1540 (11th Cir.1992).

Local Rule 220–5, NDGa. requires a motion for summary judgment be accompanied by a statement of material facts not in dispute. If the nonmoving party does not respond to the statement of material facts, the facts stated therein are deemed admitted.

The methods by which a consignor's interest in goods may be protected from the consignee's creditors are set out in O.C.G.A. § 11–2–326. This section provides that:

(2) Except as provided in subsection (3) of this Code section, ... (consigned goods) are subject to claims (of the buy-er's creditors) while in the buyer's possession.

(3) Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return (and are subject to the claims of buyer's creditors). However, this subsection is not applicable if the person making delivery: (a) Complies with an applicable law providing for a consignor's interest or the like to be evidenced by a sign; [4] or (b) Establishes that the person conducting the business is generally known by his creditors to be substantially engaged in selling the goods of others; or (c) Complies with the filing provisions of the article on secured transactions (Article 9 of this title).

When considering this issue reference must also be made to O.C.G.A. § 11–9–114, which requires the consignor to contact all secured creditors of the consignee and provide them with notice of the consignment. However, only a consignor who relies on a filed financing statement to protect its interest under U.C.C. § 2–326(3)(c) must comply with the requirements of U.C.C. § 9–114. *King's Appliance & Electronics, Inc. v. Citizens & Southern Bank*, 157 Ga.App. 857, 862, 278 S.E.2d 733 (1981); *In re Sullivan*, 103 B.R. 792, 798 (Bankr. N.D.Miss.1989); *Multibank National of Western Massachusetts v. State Street Auto Sales, Inc. (In re State Street Auto Sales, Inc.)*, 81 B.R. 215, 218–220 (Bankr. D.Mass.1988). ATG has conceded that it did not file a financing statement and that its interest in the Parts is not perfected under Article 9 of the U.C.C. Statement of Stanchart Business Credit, Inc. and Standard Chartered Bank of Canada of Undisputed Material Facts, ¶ 19 and Response of ATG Aerospace, Inc. to Statement of Allegedly Undisputed Material Facts Submitted by Stanchart Business Credit, Inc. and Standard Chartered Bank of Canada, p. 5.

*Guardian Discount Co. v. Settles*, 114 Ga.App. 418, 422, 151 S.E.2d 530 (1966).

---

**4.** Georgia does not have a law providing for a consignor's interest to be evidenced by a sign.

Accordingly, the Court concludes that O.C.G.A. § 11–9–114 is inapplicable.

ATG asserts that generally HAL's creditors knew that it was substantially engaged in selling the goods of others and that ATG's interest is therefore protected by O.C.G.A. § 11–2–326(3)(b). ATG also asserts that Stanchart's perfected security interest is not entitled to priority over ATG's interest because Stanchart had actual knowledge that HAL was selling ATG's goods on consignment, and therefore it would be inequitable to find that Stanchart's interest has priority over ATG's interest.

■ The Court will address ATG's latter argument first. ATG asserts that because Stanchart had actual knowledge of ATG's consignment to HAL Stanchart may not rely on O.C.G.A. § 11–2–326(3). The Court has not located any Georgia authority to assist in its construction of O.C.G.A. § 11–2–326 as it pertains to this issue. The Court will therefore look to cases from other jurisdictions for guidance. In *GBS Meat Indus. Pty. Ltd. v. Kress-Dobkin Co.*, 474 F.Supp. 1357, 1363 (W.D.Pa.1979), *aff'd without opinion* 622 F.2d 578 (3d Cir.1980) the court held that a secured creditor's actual knowledge of a consignment prevented the creditor from asserting a priority interest in consigned goods because such a creditor could not have reasonably been misled by the presence of the consigned goods when it extended credit to the consignee. *Id.* at 1362. The reaction to *GBS* has been mixed. *Accord Walter E. Heller & Co. v. Riviana Foods, Inc.*, 648 F.2d 1059 (5th Cir.1981) (dicta); *Newhall v. Haines*, 10 B.R. 1019, 1023 & n. 5 (D.Mont. 1981); *In re Key Book Service, Inc.*, 103 B.R. 39, 43 (Bankr.D.Conn.1989); *contra State Street*, 81 B.R. at 218–220; *Star Furniture Warehouse, Inc. v. National Bank of Commonwealth (In re Marcoly)*, 32 B.R. 423 (Bankr.W.D.Pa.1983). However, *GBS* is supported by Official Comment 2 to U.C.C. § 2–326 which states that "[t]he purpose of the exception is merely to limit the effect of the present subsection itself ... to cases in which creditors of the buyer may reasonably be deemed to have been misled by the secret reservation." Thus, if a creditor knows that goods in a debtor's place of business are on consignment, the creditor is not misled by the presence of the consigned goods and its lien should not extend to them. In addition, Official Comment 1 to U.C.C. § 1–102 provides that:

"[t]his Act shall be liberally construed and applied to promote its underlying purposes and policies. The text of each section should be read in the light of the purpose and the policy of the rule or principle in question, as also of the Act as a whole, and the application of the language should be construed narrowly or broadly, as the case may be, in conformity with the purposes and policies involved."

The Court finds the reasoning of *GBS* to be persuasive and will apply it to the case at bar.

■ ATG has proffered the testimony of Henry Eakin, Controller of HAL, in support of its allegation that Stanchart knew the Parts were consigned to HAL. Eakin testified that, while he does not recall informing Stanchart about ATG's consignment to HAL, he is certain that some of Stanchart's employees were aware of the consignment because he spoke with Clay Strickland, Assistant Vice President for Stanchart, about the different parts consigned by ATG and other companies to HAL. Eakin Deposition ("Eakin Depo."), pp. 59–60 & 76–77. Clay Strickland testified in his deposition that he knew HAL dealt in consigned goods and that he learned of this by reading inventory reports prepared by HAL and communicating with HAL's employees. Deposition of Clay Strickland ("Strickland Depo."), p. 30, 37 & 46. Mr. Strickland also testified that to his knowledge he never included consigned goods when deciding whether to make advances to HAL. (Strickland Depo. at 46). Stanchart has not provided any evidence to rebut this deposition testimony. This testimony is therefore sufficient to raise a genuine issue of fact concerning Stanchart's knowledge of ATG's consignment to HAL and which parts were consigned. Accordingly, the Court will not grant Stanchart summary judgment on this issue.

ATG also asserts that HAL was generally known by its creditors to be substantially engaged in selling the goods of others under O.C.G.A. § 11–2–326(3)(b). ATG bears the burden of proof on this issue. *King's Appliance,* 157 Ga.App. at 862, 278 S.E.2d 733. ATG must prove that HAL was both substantially engaged in selling the goods of others and was generally known by its creditors to be engaged in such sales. *Logan Paving Co. v. Massey–Ferguson Credit Corp.,* 172 Ga.App. 368, 370, 323 S.E.2d 259 (1984). Tony Martin, an officer of HAL, testified in his deposition that from 1981 to 1991 approximately 5% to 10% of HAL's sales were sales of consigned goods. Deposition of Tony Martin ("Martin Depo."), p. 35. Nancy Brumback, a sales and purchasing agent for HAL for two years, testified that from May 31, 1990 to May 31, 1991 less than 3% of HAL's sales, by dollar amount, were consignment sales. Affidavit of Nancy Brumback ("Brumback Aff."), ¶¶ 2 & 12. Henry Eakin testified in his deposition that only 1% to 2% of HAL's sales were consignment sales. (Eakin Depo. at 8).

ATG asserts that HAL was also engaged in a substantial number of broker sales and that because these sales were sales of goods of others they should be included in the Court's analysis of this issue. The Court has not located any authority that addresses whether a broker sale by a consignee is considered the selling of the goods of others under U.C.C. § 2–326. In addition, none of the parties have provided the Court with any evidence concerning the specific nature of these broker sales. A broker is defined as "[a] person whose business it is to bring buyer and seller together." Black's Law Dictionary 174–75 (5th ed. 1979). A broker, as that term is commonly used and understood, is not one who takes possession of the goods in which it deals. ATG has not offered any evidence to show that HAL's brokerage services were different from this common understanding. Therefore, it appears that HAL did not take possession of the parts it brokered, and HAL's brokered sales were not likely to generally give HAL's creditors the impression that HAL substantially engaged in the sale of goods of others. Accordingly, the Court will not include brokered sales in its analysis of this issue.

The Court finds that even the most generous estimate of HAL's consignment sales at 10% from 1981 to 1991, which the Court accepts as true for purposes of this Motion, is not a substantial amount under O.C.G.A. § 11–2–326. In Georgia it is not necessary to show that a consignee was primarily engaged in selling the goods of others in order to establish that the consignee substantially dealt in the goods of others. *Guardian Discount Co. v. Settles,* 114 Ga.App. 418, 422, 151 S.E.2d 530 (1966). Nonetheless, the Court finds that a reasonable fact finder could not conclude from the estimate that less than 10% of its sales for the preceding ten years were consignment sales that HAL was generally known by its creditors to be substantially engaged in the sale of goods of others. Accordingly, the Court will grant summary judgment on this issue to Stanchart and the Trustee.

The Trustee asserts that he may avoid ATG's interest under 11 U.S.C. § 544(a) and recover for the estate any surplus value remaining after Stanchart collects its secured claim. A trustee in bankruptcy may avoid a consignor's interest that is unprotected under U.C.C. § 2–326. *McGregor v. Jackson (In re Auclair),* 131 B.R. 185, 186 (Bankr.M.D.Ala.1991). ATG counters that the Trustee may not avoid its interest in the Parts because at the time the Debtors filed their Chapter 11 petitions the Parts had been repossessed by Stanchart and Standard. Accordingly, ATG reasons, the Trustee's § 544(a) lien did not attach to the Parts, and the Trustee may not avoid ATG's interest. The Court finds that *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) is controlling on this issue. In *Whiting Pools* the Supreme Court held that the estate retained a possessory interest in property of the debtor, notwithstanding the fact that the Internal Revenue Service ("I.R.S.") had seized the property just prior to the debtor's Chapter 11 filing. *Id.* at 207, 103 S.Ct. at 2314.

The Court further held that because the property was necessary to an effective reorganization and because the Trustee could use the property under 11 U.S.C. § 363, the Trustee could recover it from the I.R.S. pursuant to § 542(a).

In this case, Stanchart returned possession of the Parts to the Debtors, most likely in voluntary compliance with § 542(a) as construed by the Court in *Whiting Pools*. Under § 544 a trustee may avoid a consignor's interest that is not protected under U.C.C. § 2–326 at the time the consignee files bankruptcy. *McGregor*, 131 B.R. at 186. Accordingly, the Court concludes that the Trustee may avoid ATG's interest in the Parts.

The Court also finds that Stanchart's actual knowledge that the Parts were consigned to HAL has no effect on the Trustee's ability to avoid ATG's interest in the Parts. The rights and powers of a trustee under § 544 exist "... without regard to any knowledge of the trustee or of any creditor...." 11 U.S.C. § 544(a). The Court has determined that a dispute of material fact exists with regard to ATG's defense that Stanchart had actual knowledge of ATG's consignment. However, because of § 544 the Trustee is not subject to this defense. Therefore, if ATG or the Trustee establishes that Stanchart had actual knowledge that the Parts were consigned to HAL, the Trustee may sell the Parts and recover the proceeds for the benefit of the estate. If this burden is not carried Stanchart will be entitled to apply the proceeds of the sale of the Parts to its secured claim. However, no matter how the issue of fact concerning Stanchart's knowledge of the consigned Parts is resolved, ATG will be unable to prevail in its position and recover possession of the Parts. The Trustee is authorized to proceed with his sale of the Parts, provided that Stanchart consents to the sale. Accordingly, it is

ORDERED that Stanchart's Motion for Summary Judgment is granted in part and is denied to the extent of the dispute of material fact noted herein, and it is

FURTHER ORDERED that the Trustee's Motion for Summary Judgment is granted.